1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

| | |
|---|---|
| DANIEL BISSON; DOUGLAS AND SUZANNE KNUTSON; ALBERT PEARSON; JOHN PAPENBROCK; CHARLES AND TERI TRAFTON; JOSEPH KOLLMAN; AARON AND TAWNYA CRAIN; FREDERICK KREIDLER; YELENA SHINKAREVICH; IRAN ALEXANDER JR; JOSE AND ALICIA OKADA; SCOTT AND TINA HAY; DANNY LEE OSTMAN AND CATHERINE KELLEIGH; GAVIN AND JILL SWENSON; JAMES AND CYNTHIA HOAGLAND; ROBERT AND PATTY JO FURST; BRETT MERRICK; JERRY AND KERRY LAMB; CORNELIUS DENNIS AND SUSAN BRISLAWN; CHARLES AND LINDA FOSTER; LAWRENCE AND CHERYL REINIG; CRAIG AND LISA BURNS; WILLIAM AMEND; RUSSELL ABRAMS; RICHARD AND DENISE VULLIET; , | **COMPLAINT** DEMAND FOR JURY TRIAL Case No.: 11-CV-01969 |

- 1

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA 98502-6053

1    *Plaintiffs,*

2    vs.

3    BANK OF AMERICA, N.A.;

4    COUNTRYWIDE BANK, FSB; BAC HOME

5    LOANS SERVICING; COUNTRYWIDE

6    HOME LOANS, INC., RECONTRUST

7    COMPANY, N.A.; MORTGAGE

8    ELECTRONIC REGISTRATION SYSTEM,

9    INC., AND JOHN DOES 1-10,

10   *Defendants.*

11

12       Plaintiffs, DANIEL BISSON; DOUGLAS AND SUZANNE KNUTSON; ALBERT

13

14   PEARSON; JOHN PAPENBROCK; CHARLES AND TERI TRAFTON; JOSEPH KOLLMAN;

15   AARON AND TAWNYA CRAIN; FREDERICK KREIDLER; YELENA SHINKAREVICH;

16   IRAN ALEXANDER JR; JOSE AND ALICIA OKADA; SCOTT AND TINA HAY; DANNY

17
18   LEE OSTMAN AND CATHERINE KELLEIGH; GAVIN AND JILL SWENSON; JAMES

19   AND CYNTHIA HOAGLAND; ROBERT AND PATTY JO FURST; BRETT MERRICK;

20   JERRY AND KERRY LAMB; CORNELIUS DENNIS AND SUSAN BRISLAWN; CHARLES

21
22   AND LINDA FOSTER; LAWRENCE AND CHERYL REINIG; CRAIG AND LISA BURNS;
23   WILLIAM AMEND; RUSSELL ABRAMS; RICHARD AND DENISE VULLIET;  (hereinafter

24   referred to as "Plaintiffs") by and through their counsel of record, Corvus Law Group, LLC,

25   make and file this Complaint.  In support of this Complaint, Plaintiffs allege as follows:

26
27   ## NATURE OF THE CASE

28       1.    Plaintiffs bring this declaratory action in order to prevent the improper taking

29   and/or foreclosure of their property by Defendants who either no longer own the debt secured by
30   Plaintiffs' homes or never owned the debt and who lack the right to initiate non-judicial

- 2

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA 98502-6053

foreclosure proceedings on behalf of the true owners of the debt.

2.     Plaintiffs further bring this action against Defendants for damages and harm resulting from Defendants' negligent, fraudulent, and unlawful conduct concerning a residential mortgage loan and foreclosure proceedings on their property.

3.     Plaintiffs allege that Defendants are third-party strangers to their mortgage loans and have no ownership interest entitling them to collect payment or declare a default. By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiffs (and millions of other American homeowners) into believing that they have the right to collect on a debt in which they have no ownership interest. In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts, Defendants failed to execute and record an "Assignment of Deed of Trust" prior to closing. Through this action, Plaintiffs seeks to stop Defendants' fraudulent practices, discover the true holders in due course of their Promissory Notes ("Notes"), and determine the status of Defendants' claims.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332(a). The Plaintiffs and Defendants are completely diverse and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

5.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. One or more parties to this action are national associations or institutions federally regulated under 12 U.S.C. §§ 2601 et seq. (RESPA) and 15 U.S.C. §§ 1601 et seq. (TILA) and other regulatory statutes. Pursuant to 28 U.S.C. § 1367, this court also has supplemental jurisdiction over Plaintiffs' state law claims because they are so related to Plaintiffs' claims arising under

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA 98502-6053

federal law that they form part of the same case or controversy.

6.      Venue is proper in the United States Court for the District of Idaho pursuant to 28 U.S.C. § 1391(c).

## PARTIES

4.      Plaintiff Daniel Bisson is the owner of the property located at 2052 McHugh Avenue, Enumclaw, Washington 98022.  He originated his loan with Countrywide Bank on or about August 27, 2007.  Bank of America purports to be the current servicer of his loan.

5.      Plaintiffs Douglas and Suzanne Knutson are husband and wife and are the owners of the property located at 4405 Anaco Beach Place, Anacortes, Washington 98221.  They originated their loan with Countrywide Bank on or about June 22, 2007.  Bank of America purports to be the current servicer of their loan.

6.      Plaintiff Albert Pearson is the owner of the property located at 2018 Rucker Avenue, Everett, Washington 98201.  He originated his loan with Countrywide Home Loans on or about June 14, 2007.  Bank of America purports to be the current servicer of his loan.

7.      Plaintiff John Papenbrock is the owner of the property located at 3012 Edith Avenue, Enumclaw, Washington 98022.  He originated his loan with Bank of America on or about May 22, 2007.  Bank of America purports to be the current servicer of his loan.

8.      Plaintiffs Charles and Teri Trafton are husband and wife and are the owners of the property located at 1420 Terry Avenue 2304, Seattle, Washington 98101.  They originated their loan with Bank of Ameirca on or about February 24, 2006.  Bank of America purports to be the current servicer of their loan.

-4

9.    Plaintiff Joseph Kollman is the owner of the property located at 905 Reiten Road, Kent, Washington 98030. He originated his loan with Countrywide Bank on or about July 24, 2008. Bank of America purports to be the current servicer of his loan.

10.    Plaintiffs Aaron and Tawnya Crain are husband and wife and are the owners of the property located at 2160 SE Tiburon Court, Port Orchard, Washington 98366. They originated their loan with Countrywide Home Loans on or about December 27, 2005. Bank of America purports to be the current servicer of their loan.

11.    Plaintiff Frederick Kreidler is the owner of the property located at 610 6th Street, Mukilteo, Washington 98275. He originated his loan with Republic Mortgage Home Loans on or about July 13, 2007. Bank of America purports to be the current servicer of his loan.

12.    Plaintiff Yelena Shinkarevich is the owner of the property located at 4324 S. 299th Street, Auburn, Washington 98001. She originated her loan with Countrywide Home Loans on or about April 18, 2007. Bank of America purports to be the current servicer of her loan.

13.    Plaintiff Iran Alexander JR is the owner of the property located at 17312 125th Avenue, Renton, Washington 98058. He originated his loan with Countrywide Bank on or about December 3, 2007. Bank of America purports to be the current servicer of his loan.

14.    Plaintiffs Jose and Alicia Okada are husband and wife and are the owners of the property located at 5222 NE 184th Street, Lake Forest Park, Washington 98155. They originated their loan with Countrywide Home Loans on or about March 2, 2006. Bank of America purports to be the current servicer of their loan.

15.    Plaintiffs Scott and Tina Hay are husband and wife and are the owners of the property located at 2019 NE 158th Circle, Vancouver, Washington 98686. They originated their

- 5

loan with Bank of America on or about February 23, 2007. Bank of America purports to be the current servicer of their loan.

16.    Plaintiffs Danny Lee Ostman and Catherine Kelleigh are single individuals and are the owners of the property located at 18219 14th Street NE, Snohomish, Washington 98290. They originated their loan with Countrywide Bank on or about February 27, 2008. Bank of America purports to be the current servicer of their loan.

17.    Plaintiffs Gavin and Jill Swenson are husband and wife and are the owners of the property located at 799 E Woodview Drive, Spokane, Washington 99212. They originated their loan with Countrywide Home Loans on or about August 1, 2007. Bank of America purports to be the current servicer of their loan.

18.    Plaintiffs James and Cynthia Hoagland are husband and wife and are the owners of the property located at 301 Driftwood Shores Road, Camano Island, Washington 98282. They originated their loan with Bank of America on or about April 19, 2007. Bank of America purports to be the current servicer of their loan.

19.    Plaintiffs Robert and Patty Jo Furst are husband and wife and are the owners of the property located at 9428 Kopachuck Drive NW, Gig Harbor, Washington 98335. They originated their loan with Countrywide Home Loans on or about January 18, 2006. Bank of America purports to be the current servicer of their loan.

20.    Plaintiff Brett Merrick is the owner of the property located at 10008 91st Avenue NE, Arlington, Washington 98223. He originated his loan with Countrywide Home Loans on or about July 22, 2005. Bank of America purports to be the current servicer of his loan.

21.    Plaintiffs Jerry and Kerry Lamb are husband and wife and are the owners of the property located at 11805 SE 321st Place, Auburn, Washington 98092. They originated two

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

loans with Countrywide Home Loans on or about October 2, 2006 and October 3, 2006. Bank of America purports to be the current servicer of their loans.

22.     Plaintiffs Cornelius Dennis and Susan Brislawn are husband and wife and are the owners of the property located at 19325 NE 142nd Court, Woodinville, Washington 98077. They originated their loan with Bank of America on or about June 28, 2007. Bank of America purports to be the current servicer of their loan.

23.     Plaintiffs Charles and Linda Foster are husband and wife and are the owners of the property located at 5606 High Acres Drive NW, Gig Harbor, Washington 98332. They originated their loan with Countrywide Bank on or about November 26, 2007. Bank of America purports to be the current servicer of their loan.

24.     Plaintiffs Lawrence and Cheryl Reinig are husband and wife and are the owners of the property located at 5025 NW Uff Da Lane, Silverdale, Washington 98383. They originated their loan with Countrywide Bank on or about August 27, 2007. Bank of America purports to be the current servicer of their loan.

25.     Plaintiffs Craig and Lisa Burns are husband and wife and are the owners of the property located at 18351 NE 159th Street, Woodinville, Washington 98072. They originated their loan with Countrywide Bank on or about July 9, 2008. Bank of America purports to be the current servicer of their loan.

26.     Plaintiff William Amend is the owner of the property located at 8625 118th Avenue SE, Newcastle, Washington 98223. He originated his loan with Countrywide Bank on or about March 6, 2008. Bank of America purports to be the current servicer of his loan.

- 7

27.     Plaintiff Russell Abrams is the owner of the property located at 1610 E 1st Avenue, Spokane, Washington 99202. He originated his loan with Countrywide Bank on or about February 22, 2008. Bank of America purports to be the current servicer of his loan.

28.     Plaintiffs Richard and Denise Vulliet are husband and wife and are the owners of the property located at 22313 93rd Place W, Edmonds, Washington 98020. They originated two loans with Countrywide Home Loans on or about February 21, 2007. Bank of America purports to be the current servicer of their loans.

29.     Plaintiffs Kenneth and Janet O'Donnell are husband and wife and are the owners of the property located at 20113 53rd Street SE, Snohomish, Washington 98290. They originated two loans with Bank of America on or about March 7, 2007. Bank of America purports to be the current servicer of their loans.

30.     Defendant, Bank of America (hereafter "Bank of America") is a California company, with its principal place of business in Simi Valley, California and at all times relevant herein was doing business in the State of Washington.

31.     Defendant, Mortgage Electronic Registration Systems ("MERS") is a Virginia Company, with its principal place of business in Reston, Virginia and at all times relevant herein was doing business in the State of Washington.

32.     At all times material hereto, Defendant Countrywide Bank, FSB ("Countrywide Bank") was a Delaware corporation, or a division or subsidiary of Bank of America, and at all times relevant herein was doing business in the State of Washington. In 2007, Countrywide Bank was acquired by Bank of America.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA 98502-6053

33.     At all times material hereto, Defendant Countrywide Home Loans, Inc.

("Countrywide Home Loans") was a New York corporation, or a division or subsidiary of Bank

of America, and at all times relevant herein was doing business in the State of Washington.

34.     At all times material hereto, ReconTrust Company, N.A. ("ReconTrust") was and

is a National Banking Association organized under the laws of the State of Texas and at all times

relevant herein was doing business in the State of Washington. ReconTrust purportedly acts as a

trustee with regard to the deeds of trust of certain Plaintiffs and has attempted or is attempting to

conduct non-judicial foreclosure sales of the real property of those Plaintiffs.

35.     ReconTrust is a wholly owned subsidiary of Bank of America that has

intentionally and maliciously concealed the true names of entities to which Plaintiffs' home

loans were transferred.  ReconTrust is one of Bank of America's agents and acts as trustee under

certain of the deeds of trust securing real estate loans so as to foreclose on property securing the

real estate loans held or serviced by Bank of America.  The foregoing is part of a scheme by

which the Bank of America, Countrywide Financial, and Countrywide Home Loans

(collectively, "Countrywide Defendants") concealed the transfers of loans and deeds of trust in

violation of Washington Statutes §§ 45-1504 and 45-1505 as more fully described herein.

36.     BAC Home Loans Servicing ("BAC Home Loans") is a Texas corporation and at

all times relevant herein was doing business in the State of Washington.  BAC Home Loans

purports to be the servicer of certain of Plaintiffs' loans and has attempted or is attempting to

conduct non-judicial foreclosure sales of the real property of those Plaintiffs.

37.     Defendant John Does 1-10 are individuals and entities, whose identities have been

withheld by the Defendants, or unknown successors in interest, or currently unknown entities

who claim interest in the properties.  Plaintiffs are unaware of the true names and capacities of

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

Defendant John Does 1-10 and therefore sue these defendants using fictitious names. Plaintiffs are informed and believe, and on that basis, allege that these fictitiously named defendants are in some manner responsible for the damage to Plaintiffs as alleged in this Complaint. Plaintiffs will amend this Complaint to show the true names and capacities of these fictitiously named defendants after their true names and capacities have been ascertained.

38.    The actions and course of conduct of the Defendants were executed, as to all Plaintiffs, in the same manner and means (fraudulent misrepresentations in documents filed in courts, public records, and through the mails); with the same motive (to institute fraudulent and unauthorized foreclosure proceedings); with the same intended class of victims (owners of real property); and with the same intended consequences (wrongfully foreclosing on real property), pursuant to a well-planned and orchestrated scheme to defraud which was executed on a national scale throughout the United States through the institution of fraudulent foreclosure actions and regular and systematic violations of foreclosure laws in both judicial and non-judicial foreclosure jurisdictions, resulting in a nationalized fraud which has resulted in damages to the Plaintiffs.

***Relationship of Defendants***

39.    Defendant Countrywide Financial was among the leading providers of mortgages in the nation during all times relevant to this Complaint. By 2005, Countrywide Financial was the largest U.S. mortgage lender in the United States, originating over $490 billion in mortgage loans in 2005, over $450 billion in 2006, and over $408 billion in 2007. Many of the mortgages originated by Countrywide were securitized and placed into trust. Interests in the trust were then sold off to investors. Countrywide is considered a "seller" of the assets contained in trust and benefited financially from the sale of interests in the trusts. In fact, upon information and belief,

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA 98502-6053

Countrywide likely gained more from the sale of interests in the trusts than it paid out to its mortgagors.

40.      In 2007, Bank of America commenced negotiations to acquire Countrywide Financial. By late 2007, Bank of America began merging its operations with Countrywide Financial and adopting some of Countrywide Financial's practices. From and after its acquisition of Countrywide Financial and as a principal, Bank of America has engaged in and continued the wrongful conduct complained of herein.

41.      On information and belief, all other listed Defendants are believed to have been directed by, owned and operated by, or later acquired by Bank of America.

42.      At all times material hereto, all Defendants operated through a common plan and scheme designed to conceal the material facts set forth below from Plaintiffs, from the Washington public and from regulators, either directly or as successors-in-interest for others of the Defendants. The concealment was completed, ratified and/or confirmed by each Defendant herein directly or as a successor-in-interest for another Defendant, and each Defendant performed the tortious acts set forth herein for its own monetary gain and as a part of a common plan developed and carried out with the other Defendants, or as a successor-in-interest to a Defendant that did the foregoing.

43.      Plaintiffs believe and thereon allege that the agents and co-conspirators through which the named Defendants operated included, without limitation, financial institutions and other firms that originated loans on behalf of Countrywide Financial or Bank of America. These institutions acted at the behest and direction of the Countrywide Defendants, or agreed to participate—knowingly or unknowingly—in the fraudulent scheme described herein.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

44.    Those firms originating loans that knowingly participated in the scheme are jointly and severally liable with Countrywide Financial or Bank of America for their acts in devising, directing, knowingly benefitting from and ratifying the wrongful acts of the knowing participants. Upon learning the true name of such knowing participants, Plaintiffs shall seek leave to amend this Complaint to identify such knowing participants as Doe Defendants.

45.    For avoidance of doubt, such knowing participants include, without limitation, legal and natural persons owned in whole or in part by Bank of America or affiliates thereof; legal and natural persons owning directly or through affiliates financial interests in Bank of America; legal and natural persons directly or through affiliates acting pursuant to agreements, understandings and arrangements to share in the benefits of the wrongdoing alleged in this Complaint and knowingly, to at least some degree, committing acts and omissions in support thereof; and legal and natural persons knowingly, to at least some degree, acting in concert with the Defendants.

46.    As to those legal and natural persons acting in concert without an express legal relationship with Defendants or their affiliates, on information and belief, Bank of America knowingly induced and encouraged the parallel acts and omissions, created circumstances permitting and authorizing the parallel acts and omissions, benefited therefrom and ratified the improper behavior, becoming jointly and severally liable therefore.

47.    As to those legal and natural persons whose acts and omissions in support of the Bank of America scheme were unwitting, on information and belief, Bank of America knowingly induced and encouraged the acts and omissions, created circumstances permitting and authorizing the parallel acts and omissions, benefited therefrom and ratified the improper behavior, becoming liable therefore.

- 12

48.    Plaintiffs are informed and believe, and thereon allege, as follows: (1) Bank of America and its wholly-owned and controlled subsidiaries are liable for all wrongful acts of Countrywide Financial prior to the date thereof as the successor-in-interest to Countrywide Financial, (2) Bank of America directly and through its subsidiaries and other agents sued herein as Does have continued the unlawful practices of Countrywide Financial since October 31, 2007, including, without limitation thereof, writing fraudulent mortgages as set forth above and concealing wrongful acts that occurred in whole or in part prior thereto, and (3) Bank of America and its subsidiaries are jointly and severally liable as alter egos and as a single, greater unified whole.

## **GENERAL FACTS**

49.    Under Washington law, it is unlawful to willfully deceive another with the intent to induce that person to alter his or her position to his or her injury or risk.  Nevertheless, in an effort to induce the Plaintiffs to enter into their Notes with the respective Defendants, the Defendants caused the appraised value of the properties to be overstated.

50.    As described below, in order to disguise the inflated values of the properties, Defendants were orchestrating a pattern and practice of disregarding their own underwriting requirements, purposefully overvaluing properties, and inducing borrowers to enter into unrealistic mortgages in an effort to earn the points and fees associated with loan originations.

51.    During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream—homeownership.  Mortgage lenders and investment banks aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals under the promise that the booming real estate market would continue to boom.  Wall

- 13

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

1
2
3
4
5

Street took the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization." These securities were then sold to investors in the form of certificates, whereby the investors became the "Certificate holders" of the securities that were to be fed by the toxic loans.

6
7
8
9
10
11
12
13
14
15
16

52.    In order to maximize their profits, mortgage lenders and banks, including the Defendants, routinely sought and solicited predatory loans, the majority of which were under-collateralized. Specifically, Defendants encouraged loan originators, including their own origination departments, to obtain loans at inflated values; Defendants were orchestrating a pattern and practice of disregarding their own underwriting requirements, purposefully overvaluing properties, and inducing borrowers to enter into unrealistic mortgages in an effort to earn the points and fees associated with loan originations as well as to increase the volume of loans they could bundle and sell off in Mortgage Backed Securities.

17
18
19
20

53.    As part of the securitization process, immediately upon origination and funding of each loan at issue, Defendants required that each loan be assigned and transferred to Defendants and/or a Mortgage Backed Security.

21
22
23

54.    During and subsequent to securitization, the promissory notes associated with each relevant loan were repeatedly negotiated, transferred, and assigned on the secondary mortgage market.

24
25
26
27

55.    By operation of law, the right to enforce the promissory notes through enforcing the associated security (the Deeds of Trust) transferred with the promissory notes each time that the promissory notes were negotiated, transferred, and assigned.

28
29
30

- 14

56.    The post-origination negotiation, transfer, and assignment of the relevant promissory notes and their accompanying security were not recorded by Defendants as required by Washington law.

57.    Defendants purposefully and systematically failed to disclose to any of the Plaintiffs that they intended to securitize and sell Plaintiffs' Notes to third party investors and intended to do so at highly inflated and unsustainable values.

58.    The Defendants further purposefully and systematically failed to disclose to any of the Plaintiffs that the sales would include sales to nominees who were not authorized under the law at the time to own a mortgage, including, among others, MERS, and that such undocumented transfers were an express violation of Washington law.

59.    The Defendants further failed to disclose to any of the Plaintiffs that their true financial condition, their ability to repay the loans, and the value of the properties were inflated and would not be disclosed to the investors and third parties to whom the mortgages were sold.

60.    The Defendants further failed to disclose to any of the Plaintiffs that the mortgages would be used as part of a scheme by which the Defendants would bilk investors out of billions of dollars by selling collateralized mortgage pools at inflated values and based on fraudulent information.

61.    In their rush to "securitize" the predatory loans, Defendants failed to actually follow their own rules and regulations, creating the instant situation where the securities might not actually be backed by any mortgages at all. Under the standard model, the promissory notes were supposed to be "sold" and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificate holders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

maintain capital-adequacy reserves against default. The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to certificate holders, which were expected to be relatively safe.

62.     If the Plaintiffs had learned the truth and known the material facts that Defendants intentionally omitted or misrepresented, each Plaintiff would have either rescinded the loan transaction under the applicable law or they would have selected to originate their mortgage with a reputable lending institution.  Instead, each Plaintiff reasonably relied on the misrepresentations of the Defendants in originating their loans, forbearing them from exercising their rights to rescind or refinance.

63.     Defendants intentionally misled and hid from Plaintiffs that Defendants were engaged in an effort to increase market share and sustain revenue generation through unprecedented expansions of their underwriting guidelines, taking on ever-increasing credit risk.

64.     As a result, Plaintiffs lost their equity in their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs incurred material other costs and expenses, described herein.  At the same time, Defendants took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of dollars in profits by selling their loans at inflated values to investors.

65.     Countrywide Financial has asserted in its securities filings that it sold its mortgages.  Defendants have no evidence that they have re-acquired Plaintiffs' notes or deeds of trust.

66.     At the time of entering into the notes and deeds of trust referenced herein with respect to each Plaintiff, the Countrywide Defendants were bound and obligated to fully and accurately disclose the following:

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

a.   Who the true lender and mortgagee were.

b.   That to induce a Plaintiff to enter into the mortgage, the Countrywide Defendants caused the appraised value of each Plaintiffs' home to be overstated.

c.   That to disguise the inflated value of each Plaintiffs' home, Countrywide Financial was orchestrating the overvaluation of homes throughout Plaintiffs' community.

d.   That to induce Plaintiffs to enter into a mortgage, the Countrywide Defendants disregarded their underwriting requirements, thereby causing Plaintiffs to falsely believe that Plaintiffs were financially capable of performing Plaintiffs' obligations under the mortgage, when the Countrywide Defendants knew that was untrue.

e.   That Countrywide not only had the right to securitize and sell Plaintiffs' mortgages to third-party investors, but that it specifically planned and intended to do so as to virtually all mortgages at highly-inflated and unsustainable values.

f.   That as to the intended sales:

i.   The sales would include sales to nominees who were not authorized under law at the time to own a mortgage, including, among others, MERS, which according to its website was created by mortgage banking industry participants to be only a front or nominee to "streamline" the mortgage re-sale and securitization process;

- 17

    ii.     Plaintiffs' true financial condition and the true value of Plaintiffs' home and mortgage would not be disclosed to investors to whom the mortgage would be sold;

    iii.    The Countrywide Defendants intended to sell the mortgage together with other mortgages as to which it also intended not to disclose the true financial condition of the borrowers or the true value of their homes or mortgages;

    iv.    The consideration to be sought from investors would be greater than the actual value of the said notes and deeds of trust; and

    v.    The consideration to be sought from investors would be greater than the income stream that could be generated from the instruments even assuming a 0% default rate thereon.

g.    That the mortgage would thereby be used as part of a scheme by which the Countrywide Defendants would bilk investors by selling collateralized mortgage pools at an inflated value.

h.    That, at the time they did the foregoing, the Countrywide Defendants knew the foregoing would lead to a liquidity crisis and the likely collapse of Countrywide;

i.    That the Countrywide Defendants also knew the foregoing would lead to grave damage to each Plaintiffs' property value and thereby result in Plaintiffs' loss of the equity Plaintiff invested in their homes, as well as damaging Plaintiffs' credit ratings, thereby causing Plaintiffs additional severe financial damage;

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

j.    That the Countrywide Defendants knew at the time of making each loan, but did not disclose to Plaintiffs, that entire communities would become "ghost-town-foreclosure-communities" after a domino effect of foreclosures hit them;

k.    That the Countrywide Defendants did not have documents competent to establish that they are holders in due course of the notes or deeds of trust, or otherwise operating under a valid power of attorney with respect thereto to support the right to enforce the notes and deeds of trust against Plaintiffs' property; and

l.    That the Countrywide Defendants did not properly report the source of their funds in compliance with all requirements.

67.    The Countrywide Defendants knew that when interest payments increased and balloon payments became due, if not before, Plaintiffs and others would begin defaulting on their mortgages and would suffer grievous losses from mortgages for which they were not qualified. Given the inflated appraised values of their residences, even without a decline in property values, few Plaintiffs would be able to refinance or sell their homes without suffering a significant loss.

68.    The Countrywide Defendants knew that the scale of the lending—based on inflated property values, without income verification and in violation of numerous other Countrywide underwriting guidelines—would lead to widespread declines in property values, thereby putting Plaintiffs and others in extremis through which they would lose the equity invested in their homes and have no means of refinancing or selling, other than at a complete loss. That is precisely what happened to Plaintiffs herein.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA 98502-6053

69. The Countrywide Defendants concealed and did not accurately or fully disclose to any Plaintiff herein any of the foregoing facts. Further, Defendants did not disclose or explain their scheme to Plaintiffs at any time. They did the foregoing with the intent to deceive Plaintiffs and the investing public. Plaintiffs did not know the massive scheme the Countrywide Defendants had devised.

70. To the contrary, the Countrywide Defendants affirmatively misrepresented its underwriting processes, the value of its mortgages and the fundamental nature of its business model in its marketing materials, press releases, annual reports, and securities filings, all of which were widely distributed to the public, including Plaintiffs. The Countrywide Defendants intended the public, including Plaintiffs, to rely upon its misrepresentations and made those misrepresentations to create false confidence in the Countrywide Defendants and to further its fraud on borrowers and investors.

71. Plaintiffs would never have done business with the Countrywide Defendants if Defendants had disclosed their scheme. Had the Plaintiffs known the facts concealed from them by Defendants, Plaintiffs would have never entered into predatory transactions with the Countrywide Defendants designed only to line the pockets of Defendants and their executives and not to actually and justifiably create value and generate capital from the Plaintiffs' equity investments in their primary residences.

72. If the Plaintiffs had later learned the truth, each Plaintiff would have either (1) rescinded the loan transaction under applicable law and/or (2) refinanced the loan transaction with a reputable institution prior to the decline in mortgage values in late 2008. Instead, each Plaintiff reasonably relied on the deceptions of the Countrywide Defendants in originating their loans and forbearing from exercising their rights to rescind or refinance their loans.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

73.    MERS operates an electronic registry designed to track servicing rights and the ownership of mortgages. MERS is sometimes named as the "nominee" for the beneficiary, and at other times MERS is named as the "beneficiary" of the deed of trust on behalf of unknown persons. When a loan is transferred among MERS members, MERS purports to simplify the process by avoiding the requirement to re-record liens and pay county recorder filing fees.

74.    For the substantial majority of the Plaintiffs herein, MERS claims to be the owner of the security interest indicated by the mortgages transferred by lenders, investors, and their loan servicers, in the county land records which lowers costs for lenders by reducing county recording revenues from real estate transfers and purportedly provides a central source of information and tracking for mortgage loans.

75.    Based upon published reports, including the MERS website, Plaintiffs believe and thereon allege MERS does not (1) take applications for, underwrite or negotiate mortgage loans; (2) make or originate mortgage loans to consumers; (3) extend credit to consumers; (4) service mortgage loans; or (5) invest in mortgage loans.

76.    MERS is used by Defendants to facilitate the unlawful transfers of mortgages, unlawful pooling of mortgages and the injection into the United States banking industry of unsourced (i.e., unknown) funds, including, without limitation, improper off-shore funds. Plaintiffs are informed and thereon believe and allege that MERS has been listed as beneficial owner of more than half the mortgages in the United States. MERS is improperly listed as beneficial owner of many of Plaintiffs' mortgages.

77.    Because of the use of MERS, Plaintiffs do not know all of the relevant parties to this action and which, if any, Defendants have rightful claims to payment under the Notes herein. Plaintiffs will amend this Complaint as necessary to reflect the parties as they are discovered.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

78. Defendants' misconduct described herein has led to multiple investigations and substantial litigation against them. For example, Bank of America disclosed in its Annual Report for the Year Ending December 31, 2010, which was filed with the SEC on Form 10-K, that it has been subject to far-reaching investigations. Of those investigations the Bank of America's Annual Report states as follows:

> Law enforcement authorities in all 50 states and the U.S. Department of Justice and other federal agencies, including certain bank supervisory authorities, continue to investigate alleged irregularities in the foreclosure practices of residential mortgage servicers. Authorities have publicly stated that the scope of the investigations extends beyond foreclosure documentation practices to include mortgage loan modification and loss mitigation practices. The Corporation is cooperating with these investigations and is dedicating significant resources to address these issues. The current environment of heightened regulatory scrutiny has the potential to subject the Corporation to inquiries or investigations that could significantly adversely affect its reputation. Such investigations by state and federal authorities, as well as any other governmental or regulatory scrutiny of our foreclosure processes, could result in material fines, penalties, equitable remedies (including requiring default servicing or other process changes), or other enforcement actions, and result in significant legal costs in responding to governmental investigations and additional litigation.

> While we cannot predict the ultimate impact of the temporary delay in foreclosure sales, or any issues that may arise as a result of alleged irregularities with respect to previously completed foreclosure activities we may be subject to additional borrower and non-borrower litigation and governmental and regulatory scrutiny related to our past and current foreclosure activities. This scrutiny may extend beyond our pending foreclosure matters to issues arising out of alleged irregularities with respect to previously completed foreclosure activities. Our costs increased in the fourth quarter of 2010 and we expect that additional costs incurred in connection with our foreclosure process assessment will continue into 2011 due to the additional resources necessary to perform the foreclosure process assessment, to revise affidavit filings and to implement other operational changes.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

## THE LACK OF A PROPER ASSIGNMENT OF DEED OF TRUST INDICATES THAT NO INTEREST WAS EVER CONVEYED TO DEFENDANTS

79.     With respect to each of the Plaintiffs' properties, there are no duly acknowledged Assignments recorded with relevant county recorders office that purports to transfer an interest in Plaintiffs' Notes and mortgages to Bank of America. Plaintiffs allege that this is because no transfer of interest ever occurred.

80.     The lack of a proper "Assignment" supports the fact that Defendants are facilitating and aiding and abetting the illegal, deceptive and unlawful enforcement of Plaintiffs' Notes and mortgages and engaging in other illegal debt collection activities by Defendants that have no authority to collect on or enforce security related to Plaintiffs' debt obligations.

81.     Defendants have been acting in a manner to mislead the Plaintiffs into believing that Defendants have the authority to demand payments from them.

82.     As alleged herein, Plaintiffs' Notes were not properly negotiated, endorsed and transferred to Defendants, who seek to cause their purported authorized agents to collect mortgage payments and engage in other unlawful collection practices.

83.     On information and belief, none of the Defendants are present holders in due course of Plaintiffs' Notes such that they can enforce Plaintiffs' obligations.

84.     On information and belief, none of the Defendants are/were a note-holder in possession of Plaintiffs' Notes who has the rights of the holder.

85.     As alleged herein, none of the Defendants are entitled to enforce Plaintiffs' Notes.

86.     Plaintiffs allege that, on information and belief, Defendants fraudulently enforced a debt obligation in which they had no pecuniary, equitable, or legal interest. Defendants' conduct is part of a fraudulent debt collection scheme.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

87.    Plaintiffs further allege that any amounts allegedly owed under the Notes are

subject to equitable offset by the actual, consequential, special, and punitive damages owed to

Plaintiffs from Defendants, which amount is currently unknown, but will be determined upon

conducting discovery.  Plaintiffs believe this amount will be in excess of the amount of their debt

obligations.

## CONCEALMENT BY DEFENDANTS

88.    Defendants do not comply with the Federal Truth in Lending Act ("TILA"),

effective May 20, 2009, pursuant to an amendment that requires transferors of mortgage loans to

disclose to the mortgagor the identity of transferees.  The notice must include the identity,

address, and telephone number of the new creditor; the date of the transfer; how to reach an

agent or party having authority to act on behalf of the new creditor; the location of the place

where the transfer of ownership of the debt is recorded; and any other relevant information

regarding the new creditor.

89.    Section 404 of TILA, NOTIFICATION OF SALE OF TRANSFER OF

MORTGAGE LOANS, provides as follows:

IN GENERAL -Section 131 of the Truth in Lending Act (15 U.S.C. 1641) is

amended by adding at the end the following

g.    NOTICE OF NEW CREDITOR-

1)    IN GENERAL- In addition to other disclosures required by this

title, not later than assigned to a third party, the creditor that is the new

owner or assignee of the debt shall notify the borrower in writing of such

transfer, including-

i.    the identity, address, telephone number of the new creditor;

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

Plaintiffs, and (2) such actions and omissions are relevant to determining the availability of punitive damages.

## VIOLATIONS OF RCW 61.24.030 BY DEFENDANT RECONTRUST

93.    Washington law provides that "prior to the date of the notice of trustee's sale and continuing thereafter through the date of the trustee's sale, the trustee must maintain a street address in this state where personal service of process may be made, and the trustee must maintain a physical presence and have telephone service at such address." RCW 61.24.030(6).

94.    ReconTrust has executed and recorded, or caused to be executed and recorded, certain notices of trustee's sale against Plaintiffs in which ReconTrust identifies itself as "trustee" of Plaintiffs' trust deeds.

95.    However, despite the express requirements of RCW 61.24.030, ReconTrust failed to maintain a street address and physical presence in the State of Washington prior to the time these notices of trustee's sale were executed and recorded.

96.    Because ReconTrust does not maintain a street address or physical presence within the State, as described above, where the trustor or other interested parties may meet with ReconTrust, Washington law prohibits ReconTrust from acting as a trustee with respect to the Plaintiffs' trust deeds.

97.    Because of its failure to comply with RCW 61.24.030, ReconTrust lacks the authority to conduct non-judicial foreclosure sales in the State of Washington.

98.    ReconTrust has already initiated and attempted to conduct non-judicial foreclosure sales of Plaintiffs' properties.

- 26

99.     The Court should declare that ReconTrust has failed to comply with the requirements of RCW 61.24.030, and is, thus, prohibited from acting as a trustee with respect to the Plaintiffs' trust deeds and their properties.

100.    The Court should further enjoin ReconTrust from acting as a trustee in the State of Washington.

## PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES

101.    The conduct described above by Defendants was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Notes and mortgages. However, despite such knowledge, said Defendants continued to demand and collect Plaintiffs' mortgage payments.

102.    Defendants engaged and are engaging in a pattern and practice of defrauding Plaintiffs, in that, on information and belief, during the entire life of the mortgage loans, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

103.    On information and belief, at all times material, Defendants had and have actual knowledge that Plaintiffs' accounts were not accurate, but that Plaintiffs would make further payments based on Defendants' inaccurate accounts.

104.    On information and belief, Plaintiffs made payments based on the improper, inaccurate and fraudulent representations as to Plaintiffs' accounts.

105.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs overpaid in interest.

106.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs' credit and credit scores have been severely damaged. Specifically, because of the

- 27

derogatory credit reporting on their credit reports by Defendants, the Plaintiffs are unable to refinance out their present loans, buy other property, or sell their homes.

107.    As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiffs' home has been slandered, clouded and its, salability has been rendered unmarketable.

108.    As a direct and proximate result of the actions of the Defendants set forth above, including Defendants' failure to properly record the assignments of Plaintiffs' Notes and Deeds of Trust, Plaintiffs do not know who the current beneficiary of their Notes and mortgage actually is, such that they are now subject to double financial jeopardy.

109.    As a direct and proximate result of the actions of the Defendants set forth above, multiple parties can attempt to enforce Plaintiffs' debt obligation.

110.    The conduct of Defendants has led to the imminent loss of Plaintiffs' homes and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs overcalculation and overpayment of interest, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud from their property title and attorneys' fees, in an amount to be proven at trial.

111.    The conduct of Defendants was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiffs' Notes and Deeds of Trust, yet they set out on a course to intentionally and fraudulently cover up this defect by wrongfully purporting to be the legal owner of Plaintiffs' Notes and mortgages, which would enable them to illegally and fraudulently collect on Plaintiffs' debt, and which in essence has rendered the title to the property unmarketable.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

119.    Only the note holders or their expressly authorized agents have the authority to initiate such actions and enforce the Notes.

120.    For instruments payable to an identified person, such as a lender, a note holder is generally recognized as the payee or one to whom the negotiable instrument has been negotiated. This requires transfer of possession and endorsement by the prior holder.

121.    There are inadequate public records regarding the sales, assignments, and transfers of the Notes and Trust Deeds to establish who the current holders of the Notes are and who has the right and authority to enforce the Notes.

122.    Moreover, because the security associated with the Notes (the Trust Deeds), is assigned, negotiated, and transferred as part of the negotiation and assignment of the Notes, there are not adequate records to determine the individual(s) or entities with the right and authority to enforce the Notes through execution on the security via the Trust Deeds.

123.    Accordingly, it is impossible for the Plaintiffs to determine whether Defendants are acting pursuant to proper authority, particularly in light of the fact that Defendants have repeatedly refused to provide the Plaintiffs with any information establishing their purported authority to conduct non-judicial foreclosure sales.

124.    Because there is a factual dispute regarding the Defendants' authority to conduct a non-judicial foreclosure sale under Washington Trust Deeds Act, Plaintiffs seek a declaration of rights regarding the respective rights and authority of the parties to this action.  Specifically, Plaintiffs request that this Court make a finding and issue appropriate orders stating that none of the named Defendants have any right or interest in Plaintiffs' Notes, Deeds of Trust or the properties which authorizes them to collect Plaintiffs' mortgage payments or enforce the terms of the Notes or Deeds of Trust in any manner whatsoever.

- 30

they were entering into contracts with Plaintiffs. As more fully alleged herein, these facts included false appraisals, violation of Defendants' underwriting guidelines, the intent to sell Plaintiffs' mortgages above their actual values to bilk investors and knowledge that the scheme would result in a liquidity crisis that would gravely damage Plaintiffs.

130. Further, in connection with entering into contracts with Plaintiffs, Defendants made partial (through materially misleading) statements and other disclosures as to their prominence and underwriting standards in their marketing materials, public releases, on their web site, in their literature and at their branch offices. However, Defendants suppressed material facts relating thereto as set forth above. Defendants knew that the mortgages would be "pooled," and "securitized."

131. Defendants also knew that within a foreseeable period, its investors would discover that Plaintiffs could not afford their loans and the result would be foreclosures and economic devastation.

132. The Countrywide Defendants were more dependent than many of their competitors on selling loans they originated into the secondary mortgage market. The Countrywide Defendants expected that the deteriorating quality of the loans they were writing, and the poor performance over time of those loans, would ultimately curtail their ability to sell those loans in the secondary mortgage market.

133. Defendants failed to disclose that the Countrywide Defendants' business model was unsustainable.

134. Despite their awareness of, and severe concerns about, the increasing risk the Countrywide Defendants were undertaking, the Countrywide Defendants hid these risks from the borrowers, potential borrowers, and investors. The Countrywide Defendants misled borrowers,

- 32

potential borrowers and investors by failing to disclose substantial negative information

regarding their loan products, including:

    a.    The increasingly lax underwriting guidelines used by the Countrywide

           Defendants in originating loans, and the use of a "matching strategy" in

           which they matched the terms of any loan being offered in the market,

           even loans offered by primarily subprime originators;

    b.    The high percentage of loans the Countrywide Defendants originated that

           were outside their own already widened underwriting guidelines due to

           loans made as exceptions to guidelines;

    c.    That Countrywide Defendants' definition of prime" loans included loans

           made to borrowers with FICO scores well below any industry standard

           definition of prime credit quality; and

    d.    Countrywide's subprime loans had significant additional risk factors,

           beyond the subprime credit history of the borrower, associated with

           increased default rates, including reduced documentation, stated income,

           piggyback second liens, and LTVs in excess of 95%.

    135.    Countrywide Financial was one of the nation's leading providers of mortgages. It

was highly regarded and through securities filings, marketing materials, press releases, web sites,

and branch offices, Countrywide Financial had acquired a reputation for performance and quality

underwriting. As a result, Plaintiffs reasonably relied upon the deception of the Countrywide

Defendants.

    136.    Property values have precipitously declined and continue to decline, gravely

damaging Plaintiffs by materially reducing the value of their primary residences, depriving them

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA 98502-6053

of access to equity lines, second mortgages and other financings previously available based upon ownership of a primary residence in Washington, in numerous instances leading to payments in excess of the value of their properties, thereby resulting in payments with no consideration and often subjecting them to reduced credit scores (increasing credit card and other borrowing costs) and reduced credit availability.

137.    Without limiting the damages as described elsewhere in this Complaint, Plaintiffs' damages arising from this Cause of Action also include loss of equity in their houses costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys fees and costs.

138.    As a result of the foregoing, Plaintiffs' damages herein are exacerbated by a continuing decline in residential property values and further erosion of their credit records. Defendants' concealments, both as to their pervasive mortgage fraud and as to their purported efforts to resolve loan modifications with Plaintiffs, are substantial factors in causing the harm to Plaintiffs described in this Complaint.

139.    Defendants acted outrageously and persistently with actual malice in performing the acts alleged herein and continue to do so.  Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in their prayer for relief which is, by this reference, incorporated herein.

### THIRD CLAIM FOR RELIEF
### (Fraud Against Defendants)

140.    Plaintiffs incorporate and reallege in full paragraphs 1 through 139 of this Complaint.

- 34

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

141.    Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . including the false representation of . . . the character, amount, or legal status of any debt . . . and the threat to take any action that cannot legally be taken."

142.    At all times material hereto, Defendants had actual knowledge that their written statements as to the alleged ownership of Plaintiffs' Notes and Deeds of Trust and their authority to institute foreclosure proceedings were false statements of material fact which were false when made and known by Defendants to be false when made.

143.    Defendants made the subject false statements with the specific intent that Plaintiffs relied thereon and with the separate specific intent to defraud Plaintiffs.

144.    Plaintiffs, not being in the mortgage lending or loan acquisition business, reasonably relied on the written statements of Defendants and acted thereon, including but not limited to paying monies to the Defendants when demanded.

145.    As a direct and proximate result of the actions and course of conduct of Defendants, Plaintiffs have suffered damages.

## FOURTH CAUSE OF ACTION
**(Accounting)**

146.    Plaintiffs incorporate and reallege in full paragraphs 1 through 145 of this Complaint.

147.    Defendants have held themselves out as Plaintiffs' creditors and mortgage servicers. As a result of this purported relationship with Plaintiffs, said Defendants have a fiduciary duty to Plaintiffs to properly account for Plaintiffs' monies paid to them.

148.    As a result of the aforementioned fraudulent and/or negligent conduct, Plaintiffs paid Defendants their mortgage payments for a period of years. However, for the reasons stated

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

herein, none of this money was actually owed to the named Defendants. For that reason, these monies are due to be either credited back to Plaintiffs or credited to the rightful holder in due course of Plaintiffs' Notes.

149.     The amount of the money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiffs are informed and believe and thereon allege that the amount due to them exceed $75,000.00.

### FIFTH CLAIM FOR RELIEF
#### (Violation of Fair Debt Collection Practices Act,
#### 15 U.S.C. § 1692f(6) by Defendants)

150.     Plaintiffs incorporate and re-allege in full paragraphs 1 through 149 of this Complaint.

151.     The Fair Debt Collection Practices Act (the "Act") prohibits a debt collector from "taking or threatening to take any non-judicial action to effect dispossession or disablement of property if ...there is no present right to possession of the property claimed as collateral through an enforceable security interest...." 15 U.S.C. § 1692f(6).

152.     Defendants qualify as debt collectors under the Act, because they use instrumentalities of interstate commerce of the mails for the purpose of enforcing security interests. 15 U.S.C. § 1692a(6).

153.     At the dates set forth herein, Plaintiffs entered into Trust Deed agreements with their lenders for the purpose of securing Plaintiffs' payment obligations under the Notes.

154.     As previously alleged by the Plaintiffs, the original lenders attempted to assign, sell, transfer, or securitize the Notes at some point after funding. Thus, other entities, not the

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

Defendants, have the right to collect payments on the loan and in cases of default, pursue the remedies set forth in the Trust Deeds.

155.    Despite the fact that the original lenders attempted to assign, sell, transfer, or securitize the Notes, the Defendants, without authority or authorization, have tried to collect payments from the Plaintiffs and pursue the remedies set forth in the Trust Deeds, including commencing non-judicial foreclosure actions against the Plaintiffs.

156.    Defendants, in attempts to collect on debts evinced by the Notes and Trust Deeds, have taken or are threatening to take non-judicial actions to effect dispossession or disablement of Plaintiffs' property.

157.    Defendants are taking these actions despite the fact that Defendants have no present right to possession of the property claimed as collateral through an enforceable security interest because Defendants do not have the standing or authority to enforce the Trust Deeds.

158.    Accordingly, pursuant to 15 U.S.C. § 1692f(6), the Court should enjoin the Defendants from conducting non-judicial foreclosure sales of the Plaintiffs' Property.

159.    Defendants are liable to Plaintiffs for Defendants' violations of the Act.

**WHEREFORE**, Plaintiffs pray as follows:

1.    For compensatory, special and general damages in an amount according to proof at trial against all Defendants;

2.    For punitive and exemplary damages in an amount to exceed $5,000,000.00;

3.    For an order enjoining the further disposition of the Properties pending resolution hereof;

4.    An order declaring:

    (a)    The rights of the parties relative to the Notes and the properties;

- 37

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

(b)    That MERS is not a real party in interest since it styles itself merely as a nominee and is not a valid beneficiary under the Deeds of Trust;

(c)    That subsequent to the initial sale, assignment, and/or transfer of the Notes, MERS is not a valid note holder with the power to enforce the instrument, including the right to declare default, foreclose or initiate foreclosure proceedings absent its ability to produce a valid express agency agreement with the note holders;

(d)    That MERS does not have a valid agency relationship with any true party in interest; and/or

(e)    That Defendants lack any interest in the properties which permitted them to foreclose or attempt to foreclose the Deeds of Trust and/or sell the Properties.

5.    For an order finding that Defendants have no legally cognizable rights as to the Plaintiffs, Plaintiffs' properties, Plaintiffs' Notes, Deeds of Trust, or any other matter based on contract or any of the documents prepared by Defendants tendered to and executed by Plaintiffs;

6.    For an order restraining Defendants, their agents or employees, from continuing or initiating any action against Plaintiffs' properties and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

7.    For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning the same to Plaintiffs with interest thereon at the statutory rate from the date the funds were first received from Plaintiffs;

8.    For costs of suit incurred herein;

9.    For reasonable attorneys' fees incurred; and

10.    For such other and further relief as the Court may deem property.

DATED: November 26, 2011.

- 38

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
2401 Bristol Court SW, Suite A-102
Olympia, WA  98502-6053

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

CORVUS LAW GROUP, LLC

Kevin L. Johnson, wsb 24784
*Attorneys for Plaintiffs*

- 39